UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| STEMLINE THERAPEUTICS, INC., RON | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| BENTSUR, IVAN BERGSTEIN, M.D., | : **THE SECURITIES EXCHANGE ACT** |
| DARREN CLINE, ALAN FORMAN, | : **OF 1934** |
| DANIEL HUME, MARK SARD, and | : |
| KENNETH ZUERBLIS, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Stemline Therapeutics, Inc. ("Stemline or the "Company") and the members Stemline board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Stemline by affiliates of BerlinChemie AG, a company formed under the laws of Germany ("BerlinChemie"), an indirect wholly owned subsidiary of A. Menarini -Industrie Farmaceutiche Riunite - S.r.l., a company formed under the laws of Italy ("Menarini" and together with BerlinChemie, the "Purchaser").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on May 12, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Mercury Merger Sub, Inc., a wholly owned subsidiary of Berlin-Chemie, will merge with and into Stemline, with Stemline continuing as the surviving corporation and as a wholly owned subsidiary of BerlineChemie (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated May 3. 2020 (the "Merger Agreement"), each Stemline common share issued and outstanding will be converted into the right to receive (i) $11.50 per Share, net to the seller in cash, without interest (the "Cash Amount"), plus (ii) one (1) contingent value right per Share (a "CVR" and the Cash Amount plus one (1) CVR collectively, the "Offer Price") (the "Merger Consideration"). Each CVR represents the right to receive (i) $1.00 in cash or (ii) for each Share subject to a stock option with an exercise price above $11.50 but below $12.50, the amount in cash equal to the excess of $12.50 over the per Share exercise price of such stock option (collectively, the "Milestone Payment"), net to the seller in cash, without interest, if the milestone set forth in the Contingent Value Rights Agreement (the "CVR Agreement") is achieved. In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Stemline's outstanding common stock and will expire on June 9, 2020.

3.     Defendants have now asked Stemline's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Stemline's financial

projections relied upon by the Company's financial advisors, PJT Partners LP ("PJT") and BofA Securities, Inc. ("BofA") in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Stemline stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Stemline's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Stemline is headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Stemline common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Ron Bentsur has served as a member of the Board since 2009.

11. Individual Defendant Ivan Bergstein, M.D. founded the Company in 2003 and is Stemline's Chairman and Chief Executive Officer.

12. Individual Defendant Darren Cline has served as a member of the Board since April 2018.

13. Individual Defendant Alan Forman has served as a member of the Board and since April 2015.

14. Individual Defendant Daniel Hume has been a member of the Board since April 2018.

15. Individual Defendant Mark Sard has served as a member of the Board since April 2018.

16. Individual Defendant Kenneth Zuerblis has served as member of the Board since March 2012.

17. Defendant Stemline is incorporated in Delaware and maintains its principal offices at 750 Lexington Avenue, Eleventh Floor, New York, New York 10022. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "STML."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.      The Proposed Transaction**

20.     Stemline, a commercial-stage biopharmaceutical company, focuses on the discovery, acquisition, development, and commercialization of oncology therapeutics in the United States and Europe. The Company offers ELZONRIS, a targeted therapy directed to the interleukin-3 receptor (CD123) for patients with blastic plasmacytoid dendritic cell neoplasm in adults, and in pediatric patients two years and older. It also developing CD123 that is in Phase I/II clinical trials for the treatment of chronic myelomonocytic leukemia and myelofibrosis, as well as acute myeloid leukemia and multiple myeloma in combination with other therapies. In addition, the company is developing SL-801, a novel oral small molecule reversible inhibitor of nuclear transport protein, which is in Phase I clinical trial for the treatment of solid and hematologic cancers; and SL-701, an immunotherapy that has completed Phase II clinical trials to treat brain cancer. Its preclinical pipeline products include SL-501, a CD123 targeted therapy; SL- 1001, an oral, selective small molecule RET kinase inhibitor targeting multiple oncology indications; and SL-901, a small molecule kinase inhibitor. Stemline was founded in 2003 and is headquartered in New York, New York.

21.     On May 4, 2020, Menarini and the Company announced the Proposed Transaction:

FLORENCE, Italy and NEW YORK, May 04, 2020 (GLOBE NEWSWIRE) -- Menarini Group, a privately held Italian pharmaceutical and diagnostics company, and Stemline Therapeutics Inc., a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics, (Nasdaq: STML) today announced a definitive agreement under which Menarini Group will acquire Stemline in a transaction valued up to $677 million.

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable Contingent Value Right (CVR) that will entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. Stemline launched ELZONRIS for the treatment of blastic plasmacytoid dendritic cell neoplasm (BPDCN) in adult and pediatric patients, two years or older, following the approval by the United States Food and Drug Administration in December 2018. ELZONRIS is a novel targeted therapy directed to the interleukin-3 (IL-3) receptor-$\alpha$ (CD123).

With the support of Menarini's infrastructure, Stemline will continue its efforts to develop additional applications of ELZONRIS to serve the unmet needs of patients suffering from difficult to treat diseases and cancers. Following its strong U.S. launch of ELZONRIS, Stemline will benefit from Menarini's experience in bringing products to markets in Europe and emerging markets as it prepares for a successful international launch upon receipt of regulatory approval in ex-U.S. territories.

Elcin Barker Ergun, CEO of Menarini Group, commented, "Stemline is an excellent fit for Menarini, enabling us to expand our presence in the U.S. with an established biopharmaceutical company focused on developing oncology therapeutics. Through this acquisition, we will continue to strengthen our portfolio and pipeline of oncology assets and deliver novel therapies around the world. We look forward to uniting together with the Stemline team to advance our shared mission of serving patients."

Ivan Bergstein, M.D., Chairman, CEO and Founder of Stemline, said, "Joining Menarini represents a unique opportunity for Stemline to advance the commercialization of ELZONRIS across the globe and to accelerate the development of our pipeline of oncology assets. We have transitioned Stemline over the last several years into an established commercial-stage operation with a novel treatment, a growing pipeline and a strong foundation. We are excited to be combining with a like-minded organization in Menarini, in a transaction that will deliver immediate and significant cash value to our shareholders, while also allowing our shareholders to participate in the future upside of ELZONRIS's European launch. We look forward to working closely together on our unified goal of helping and delivering hope to patients worldwide."

**Transaction Terms**

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 per share in cash, along with one non-tradeable Contingent Value Right (CVR).

Under the terms of the non-tradeable CVR, Stemline shareholders will be paid an additional $1.00 per share upon completion of the first sale for use or consumption by the general public of ELZONRIS in BPDCN in any one of the following countries: United Kingdom, France, Spain, Germany, or Italy after receiving approval by the European Commission of a Marketing Authorization Application (MAA), through the centralized procedure, on or before December 31, 2021. There can be no assurance such approval or commercialization will occur or that any contingent payment will be made.

Menarini will acquire any shares of Stemline not tendered into the tender offer through a second-step merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

> The transaction has been unanimously approved by the Boards of Directors of both companies. Stemline's Board of Directors recommends to shareholders of Stemline that they tender their shares into the tender offer. The transaction is expected to close in the second quarter of 2020, subject to customary closing conditions, including the tender of more than 50% of all shares of Stemline outstanding at the expiration of the offer and receipt of Hart-Scott-Rodino clearance. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.
>
> Menarini expects to fund the acquisition through existing cash resources.
>
> **Advisors**
>
> Goldman Sachs International is acting as exclusive financial advisor and Fried, Frank, Harris, Shriver & Jacobson LLP is acting as legal advisor to Menarini. PJT Partners and BofA Securities are acting as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP and Alston & Bird LLP are acting as legal advisors to Stemline.

\* \* \*

22. It is therefore imperative that Stemline's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.** **The Materially Incomplete and Misleading Solicitation Statement**

23. On May 12, 2020, Stemline filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

24. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the financial advisors, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

25. For the Management Projections (the "Projections") prepared by Company management for Stemline for fiscal years 2020 through 2031, the Solicitation Statement fails to provide what the risk and probability adjustments were assumed and applied for the purposes of preparing the Projections.

26. As indicated on page 32 of the Solicitation Statement, the Projections are "risk-adjusted," but the Solicitation Statement does not explain why only risk-adjusted figures are disclosed.

27. With respect to PJT's *Selected Precedent Merger Analysis*, the Solicitation Statement fails to disclose the premiums for the transactions selected.

28. With respect to PJT's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of after-tax discount rates from 12% to 14%; (ii) the implied fully diluted number of Company shares.

29. With respect to BofA's *Selected Precedent Merger Analysis*, the Solicitation Statement fails to disclose the premiums for the transactions selected.

30. With respect to BofA's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 9.0% to 12.0%; (ii) Company's estimated cash.

31. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(e) of the Exchange Act

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

34. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary

in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

36. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

37. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

38. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the

Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

39. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**(Against All Defendants)**

40. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

41. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

42. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

43. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

44. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Stemline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Stemline, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Stemline, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Stemline, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

13

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

50. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: May 13, 2020                 **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
Email: melwani@whafh.com